**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Oscar DARGAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 26, 2005.

Filed March 31, 2006.

Reargument Denied May 26, 2006.

James R. Elliott, Scranton, for appellant.

Paul J. Ware, Asst. Dist. Atty., Scranton, for Com., appellee.

BEFORE: DEL SOLE, P.J., MUSMANNO, and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 This is an appeal from the judgment of sentence of 8 to 16 years' imprisonment imposed following Appellant's jury conviction of possession[1] and possession with intent to deliver heroin and cocaine.[2] Before this Court Appellant presents challenges to: 1) the introduction of testimony he characterizes as inadmissible hearsay; 2) the trial court's refusal to grant him a continuance to obtain certain evidence; 3) the constitutionality of the search of his apartment; and 4) the sufficiency of the evidence against him. We affirm.

¶ 2 On June 20, 2003, Det. Robert Mazzoni of the Narcotics Investigation Unit of the Lackawanna County District Attorney's Office received information from a confidential informant (CI) that heroin could be purchased from an African–American male, "Oc," or his girlfriend, "Kay," who both resided in Old Forge near the intersection of Main St. and Dunn Ave. "Oc," described as bald, 5'5," and 130 lbs., reportedly operated a brown Chevrolet Corsica with a temporary registration notice in its window, and license plate num-

---

1.  35 P.S. § 780–113(a)(116).

2.  35 P.S. § 780–113(a)(113).

ber FTD 3761. Det. Mazzoni provided this information to Dets. Gunther Pisa and Joseph Jordan who, while conducting surveillance in the area, discovered the Corsica near 336 North Main St., the residence occupied by Appellant, Oscar Dargan, and Karlene Bassarath. On the basis of his report, the CI was directed to make a controlled buy in the parking lot of a nearby store where Det. Mazzoni would observe the transaction. Prior to the appointed time, the CI drove to the parking lot followed by Det. Mazzoni. Meanwhile, Dets. Pisa and Jordan watched Appellant and Ms. Bassarath emerge from their residence and enter the Corsica, following them to the parking lot where the sale was to occur. When Appellant and Ms. Bessarath arrived, the CI entered the Corsica. He had been instructed that if the heroin purchase was consummated, he should place his cap backward on his head when exiting the car. He did as he was told.

¶ 3 After Appellant and Ms. Bassarath left the parking lot followed by the detectives, the CI handed 10 bags of heroin purchased from Appellant to Det. Mazzoni, who alerted Dets. Pisa and Jordan. The Corsica was then stopped and Appellant and Ms. Bessarath taken into custody. A search of their vehicle produced $200 in serialized currency between the cushions where Appellant had been seated.

¶ 4 After receiving their *Miranda*[3] warnings, Appellant and Ms. Bessarath identified their place of residence as 336 North Main St., Old Forge, as of Appellant's release from prison 16 days earlier. They also conceded that more drugs were located there, and signed releases for a

search of the premises. Exploration of the kitchen under Appellant's guidance revealed 4 grams of heroin in packets bearing labels and markings identical to those on the heroin purchased by the CI in the parking lot, as well as 26 grams of crack cocaine, and 5.2 grams of cocaine hydrochloride. Also recovered, this time from the bedroom, was $1,092 in cash identified by Appellant as proceeds from drug sales, and clothing claimed by Appellant as his. No paraphernalia consistent with personal use of the drugs was unearthed.

¶ 5 Appellant was not charged in connection with the heroin from the parking lot sale, but was found guilty by the jury of three counts each of possession and possession with intent to deliver in connection with the contraband recovered from his apartment. The sentences were entered to run consecutively, and a $10,000 fine was also imposed. This appeal followed.

■ ¶ 6 Four issues are raised, the first of which asserts a violation of Appellant's constitutional right to confrontation in connection with the trial testimony of Det. Mazzoni. Specifically, Appellant's complaints concern Mazzoni's reportage at trial of those statements made to him by the CI,[4] which the trial court admitted for the purpose of explaining the predicate for Mazzoni's investigation. These statements—consisting of the report that heroin could be purchased from Appellant, a description of him, and of his automobile, his address and the name of his girlfriend—it is argued, are inadmissible hearsay, testimonial in nature and incriminating in effect, as they constitute evidence of Appellant's prior bad acts. As such, the

---

3. *Miranda v. Arizona*, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).

4. Appellant's statement of the issues describes the source of the officer's information as "a witness whom (sic) would not testify, whom the defense never had an opportunity to con-

front, and whom the Commonwealth would not identify." (Appellant's Brief at 4). Although Appellant's pre-trial omnibus motion sought the identity of the CI, the trial court's denial of his request has not been challenged.

argument goes, their introduction results in a violation of the rule enunciated by the United States Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). That case prohibits the use of "testimonial" out-of-court statements by an unavailable witness as evidence against a criminal defendant absent an opportunity for the defendant to cross examine the witness, and irrespective of the applicability of any hearsay exception.

¶ 7 Before discussing the specifics of Appellant's claim, we note that the admissibility of evidence rests within the sound discretion of the trial court, whose decision we will not disturb absent a showing that its discretion has been abused. *Commonwealth v. Gray,* 867 A.2d 560, 569–70 (Pa.Super.2005), *appeal denied,* 583 Pa. 694, 879 A.2d 781 (2005). "Discretion is abused when the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Commonwealth v. Hood,* 872 A.2d 175, 178 (Pa.Super.2005), *appeal denied,* 585 Pa. 695, 889 A.2d 88, 2005 PA Lexis 2390 (2005) (citations omitted).

¶ 8 "The hearsay rule provides that evidence of a declarant's out-of-court statements is generally inadmissible because such evidence lacks guarantees of trustworthiness fundamental to the Anglo–American system of jurisprudence." *Commonwealth v. Chamberlain,* 557 Pa. 34, 731 A.2d 593, 595 (1999). Indeed, the focus of the Confrontation Clause is testimonial hearsay. *Crawford, supra* at 51–52, 124 S.Ct. 1354. However, "[w]hen a hearsay statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excluda-ble under the hearsay rule." *Hood, supra* at 181. Indeed, the *Crawford* Court makes clear that even the use of testimonial statements is not barred by the Confrontation Clause "for purposes other than establishing the truth of the matter asserted." *Id.* at 58, 124 S.Ct. 1354. In any event, it is a long standing rule of jurisprudence that "[a]n out-of-court statement offered to explain a course of conduct is not hearsay." *Commonwealth v. Dent,* 837 A.2d 571, 577 (Pa.Super.2003), *appeal denied,* 581 Pa. 671, 863 A.2d 1143 (2004) (quoting *Commonwealth v. Cruz,* 489 Pa. 559, 414 A.2d 1032, 1035 (1980)). *See also Commonwealth v. Smith,* 250 Pa.Super. 436, 378 A.2d 1015, 1017 (1977), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978) (trooper's testimony in a bookmaking prosecution concerning informant's statement that the trooper could place bets by telephoning a certain number was not hearsay, as it explained trooper's subsequent actions).

¶ 9 The *Crawford* Court did not define testimonial statements, although it did offer guidance by positing three general categories of such material:

[1] *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially ... [2] extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions ... statements that were made under circumstances which would lead an objective witness to believe that the statement would be available for use at a later trial ...

\* \* \* \* \* \*

[3] Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.

*Id.* at 51–52, 124 S.Ct. 1354.

¶ 10 In *Gray, supra* this Court addressed the impact of *Crawford* on statements, categorized as excited utterances, made by one of the victims at a crime scene to police officers responding to a third party report of an assault. The statements were examined against each *Crawford* category of testimonial declaration, resulting in the conclusion that they were not testimonial in any formalized sense, rather that the crucial inquiry concerned the declarant's putative expectation that the statement would be put to prosecutorial use, that is, whether, in fact, the declarant's statement was made in contemplation of prosecution. Excited utterances were determined not to be of this ilk as they are "volunteered by the declarant and made to obtain the assistance of police." *Gray* at 577.

¶ 11 In a way those same qualities could be attributed to the CI's original report, which, although not in any sense an excited utterance, was also unsolicited and sought police assistance, albeit in the form of some future benefit for himself rather than aid for a supposed victim. As the *Gray* Court observed, the crucial distinction between testimonial and non-testimonial statements seems to lie in whether they were the product of interrogation or specific inquiry of almost any sort, or were voluntary, indeed, spontaneous: the reporting witness to the assault in *Gray* had not been questioned by police who "had not even stopped to record her statements," *id.*, but immediately acted upon them by pursuing the attacker. The lack of reason or deliberation on the part of the speaker is noted as critical. *Id.* at 575.

¶ 12 Here, although an attempt was made during defense counsel's cross-examination of Det. Mazzoni to intimate that the CI's approach was the product of ill-will, deliberately initiated with a view to later, prosecutorial use of his information to prejudice Appellant, no evidence to that effect was produced, and indeed, Appellant has not repeated the allegation on appeal. Rather, Appellant alleges that testimony concerning the CI was the Commonwealth's method of prejudicing him, since "the reality [of the course of conduct exception] is that the jury takes whatever is said and uses it against the defendant no matter what the intent of the prosecutor, whether real or invented." (Appellant's Brief at 11).

¶ 13 We first note that unless evidence to the contrary is shown, a presumption exists that the jury will obey the trial court's instructions. *Commonwealth v. O'Hannon,* 557 Pa. 256, 732 A.2d 1193, 1196 (1999). Appellant has produced nothing to rebut the presumption. Even assuming his argument has some validity, evidence of prior bad acts, although generally proscribed, is admissible "in special circumstances where the evidence is relevant for some other legitimate purpose," *Commonwealth v. Davis,* 737 A.2d 792, 796 (Pa.Super.1999), such as "to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be used to impeach the credibility of a testifying defendant ... and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development." *Commonwealth v. Reid,* 571 Pa. 1, 811 A.2d 530, 550 (2002), *cert. denied,* 540 U.S. 850, 124 S.Ct. 131, 157 L.Ed.2d 92 (2003).

¶ 14 Further, the trial court specifically instructed the jury that the informa-

tion supplied to Det. Mazzoni by the CI was to be considered only for the very limited purpose of explaining the officer's acts in connection with his investigation. (N.T., 1/22/05, at 46–48). "An appellate court will not attribute error when the Trial Judge provides an instruction that fully explains the purpose for which the jury may consider specific evidence." *Davis, supra* at 797. Indeed, this Court has found that even the prejudice wrought by the " 'contextual implication' of criminal defendants in the properly admitted confessions of non-testifying co-defendants" is not barred by *Crawford,* and is curable by a cautionary jury instruction. *Commonwealth v. Whitaker,* 878 A.2d 914, 922 (Pa.Super.2005). Accordingly, we find no error in the court's admission of the CI's information.

■ ¶ 15 Appellant next argues[5] that the trial court erred in refusing him a continuance to obtain evidence that he lived at an address in Scranton rather than the apartment in Old Forge where the drugs were discovered, and asks that a new trial be granted for this reason and because he has, since the conclusion of trial, received new evidence of his Scranton residence.

¶ 16 This Court has held that "[t]he refusal to grant a continuance constitutes reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated." *Commonwealth v. Pries,*

861 A.2d 951, 953 (Pa.Super.2004), *appeal denied,* 882 A.2d 478 (Pa.2005) (citation and quotation marks omitted). Appellant asserts that the court's ruling was· error because the Post Office refused to honor his subpoena for evidence that he resided in Scranton. As Appellant provides no information about what evidence he sought, we find no error in the trial court's conclusion that a continuance was inappropriate.

■ ¶ 17 After-discovered evidence provides the basis for award of a new trial where:

1) the evidence has been discovered after trial and could not have been ·obtained prior to the conclusion of trial by the exercise of due diligence;

2) the evidence is not merely corroborative or cumulative;

3) the evidence will not be used solely for impeachment purposes; and

4) the evidence is of such a nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Figueroa,* 859 A.2d 793, 799 (Pa.Super.2004) (citation omitted).

¶ 18 The evidence Appellant offers consists of a telephone bill and an application to a business college, both of which do, in fact, reflect an address in Scranton. As the trial court observes, the telephone bill reflects discontinuance of service four

**5.** We note that insofar as Appellant's remaining claims are concerned, in his Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), Appellant contends only that the trial court erred in: [1] "refusing to grant ... a continuance of the trial; [2] deny-, ing [his] request to suppress the search of the residence; [3] denying [his] omnibus pre-trial motion; [4] denying [his] post sentence motion." No further explanation is given as to why any of these acts constitutes error. Thus under this Court's decision in *Commonwealth v. Lemon,* 804 A.2d 34 (Pa.Super.2002), in which we held that a concise statement too vague to apprise the court of the issues raised is "the functional equivalent of no Concise Statement at all," *id.* at 37 (citations omitted), we would find Appellant's remaining issues waived. We will, however, address the merits as if Appellant's claims had been properly preserved since the reasoning behind them was made clear during post trial proceedings, the trial court reports no difficulty interpreting Appellant's 1925(b) statement, and, in any event, no relief is due.

months prior to Appellant's arrest, and therefore does not meet the criterion of evidence likely to produce a different result at trial, since it demonstrates only Appellant's residence, or just the existence of a telephone number listed in his name, in Scranton at some point. As to the school application, which was dated about two weeks prior to Appellant's arrest, there is no proof that it was valid, or even that it was ever sent. Moreover, no explanation is given as to why these materials could not have been obtained prior to the conclusion of trial. Although, as already noted, Appellant asserts that a subpoena served on the U.S. Post Office was not honored and he was himself incarcerated, neither of these conditions would have impeded an exercise of due diligence by counsel. More salient is the admission by both Appellant and Ms. Bessarath that they resided in Old Forge, their signatures on consents to search those premises, and Appellant's identification of the location of both drugs and cash hidden in various locations in that residence. We find no error in the trial court's refusal to grant Appellant a new trial on the basis of after-discovered evidence.

¶ 19 Appellant next insists that the search of the Old Forge address was unconstitutional as his consent to search was obtained by police only after the search had already been conducted. The source of Appellant's discontent is based upon temporal discrepancies in the record resulting from clerical error. Specifically, the consent to search was marked as having been obtained at 2:50, while the fruits of the search were logged in at 2:15. Both numbers were noted in military time, *i.e.*, 14:50 and 14:15 respectively. Det. Mazzoni testified unequivocally and repeatedly that Appellant's consent was obtained prior to the search. As a result, and since no claim of coercion has been advanced, the

issue was solely one of credibility for the jury, which resolved it adversely to Appellant. We decline to interfere, since the trier of a fact is free to believe all, part or none of the evidence. *Commonwealth v. Snyder*, 870 A.2d 336, 350 (Pa.Super.2005).

¶ 20 Appellant's final claim is that the evidence was insufficient to support his conviction of possession with intent to deliver.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002) (citations and quotation marks omitted) (quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super.2000)).

¶ 21 Where, as in the instant case, the drugs were not found on the defendant's person, the Commonwealth

must demonstrate constructive possession, that is, "the ability to exercise conscious control or dominion over the illegal substance and the intent exercise that control." *Commonwealth v. Kirkland*, 831 A.2d 607, 610 (Pa.Super.2003), *appeal denied*, 577 Pa. 712, 847 A.2d 1280 (2004). As with any other element of a crime, "[t]he intent to exercise conscious dominion can be inferred from the totality of the circumstances." *Id.*

¶ 22 Appellant contends that the Commonwealth failed to show his constructive possession of the drugs because as a self-described guest at the Old Forge apartment with an actual residence elsewhere, he knew the location of the drugs; there was access by other persons to the drugs; and nothing demonstrated that the drugs were not for personal use. We are unpersuaded.

¶ 23 The matter of Appellant's residence has been discussed above, and his current iteration of the same claim does nothing to improve his argument. As already noted, he gave police the Old Forge address as his residence and led them immediately to his caches of various illegal substances. There was, in addition, no paraphernalia in the apartment consistent with personal use of the drugs which expert testimony established as too large a quantity for individual purposes. Moreover, the serialized currency given to the CI for the buy was found in Appellant's car immediately after the purchase was made, and the heroin in the apartment was packaged and marked identically to the packets involved in the buy. In addition, a large sum of cash, identified by Appellant as the profits from drug sales, was found in the residence of an unemployed person who had been released from prison only 16 days previously. Finally, as to the "other persons" alluded to by Appellant as having access to the drugs, we find nothing in the record to support Appellant's insistence on their access. Even Ms. Bassarath is never mentioned in this connection. Accordingly, we find no insufficiency of evidence to prove the charges.

¶ 24 Judgment of sentence affirmed.