J-S63042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SYLVESTER ANDERSON, | |
| Appellant | No. 2239 MDA 2013 |

Appeal from the Judgment of Sentence November 5, 2013
in the Court of Common Pleas of Cumberland County
Criminal Division at No.: CP-21-CR-0000874-2013

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 18, 2014**

Appellant, Sylvester Anderson, appeals from the judgment of sentence imposed after his jury conviction of possession with intent to deliver a controlled substance (PWID) and possession of a controlled substance.[1]  We affirm.

We take the following facts and procedural history from the trial court's April 15, 2014 opinion and our independent review of the record.  On March 8, 2013, Carlisle Borough police initiated a traffic stop of Appellant to serve an arrest warrant unrelated to the present case.  When Corporal Timothy Groller activated his overhead lights, he observed Appellant turn

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-118(a)(30) and (a)(16), respectively.

from the driver's seat and throw something to the back right of the vehicle, on the passenger's side. (*See* N.T. Trial, 9/11/13, at 38-39). Appellant was alone in the vehicle, which was registered to him. (*See id.* at 38, 115).

When the police officers arrested Appellant, they found approximately $2,000.00 on his person, folded in several separate bundles. (*See id.* at 42-43). Detective Christopher S. Collare of the Cumberland County Drug Task Force searched Appellant's vehicle pursuant to a search warrant and discovered a black knit glove behind the passenger's side. (*See id.* at 98, 105). Inside the glove, he found a zip lock baggie containing six individually packaged glassine bags of heroin totaling .18 grams. (*See id.* at 105, 108, 113). Detective Collare did not discover any drug paraphernalia. (*See id.* at 107-08).

A jury trial commenced on September 11, 2013. Sergeant Scott Thornsberry of the Pennsylvania Counterdrug Joint Task Force testified as an expert in the operation of Ionscan equipment, which is used to detect the level of drug residue on a surface. (*See id.* at 79, 81, 84). Sergeant Thornsberry testified to a reasonable degree of certainty that the level of cocaine on the currency found on Appellant's person was well above the Pennsylvania average and that it had been in close proximity to cocaine recently, *i.e.*, "somebody had to touch drugs and [then] touch the money[.]" (*Id.* at 93; *see id.* at 86, 92-93).

Detective Collare, who testified as an expert in the area of street level drug trafficking, explained that dealers typically sell multiple varieties of drugs. (*See id.* at 100, 120). He noted that more cocaine residue is found on currency used in the drug trade than heroin because, by the nature of heroin's packaging in pre-sealed glassine bags, a dealer would rarely have reason to open one and thereby get residue on his hands. (*See id.* at 120-21). He also testified that the money found on Appellant in separate bundles and in different pockets, "scream[ed]" of dealing and drug trafficking, and that the money overwhelmingly was comprised of twenty dollar bills, which are typically used in drug transactions. (*Id.* at 116; *see id.* at 42, 63, 117-18). Finally, when asked whether Appellant possessed the six bags of heroin with the intent to distribute, Detective Collare expressed his expert opinion that "[i]n my opinion, there is no doubt that they were possessed to distribute. I have no doubt about that." (*Id.* at 127).

Appellant testified that he sometimes slept in his car, and kept his valuables there, in order to keep them safe from other boarding house tenants, who often stole his property. (*See id.* at 176, 188-90). However, he denied ownership of the heroin found in his vehicle. (*See id.* at 191). Appellant stated that he bundled the money found on him the way he did because it was to be used for separate purposes, and his mother briefly testified that she had given him a total of $5,000.00 for an apartment rental

over February and March. (**See id.** at 163, 169-70). Appellant maintained that he was a severe heroin addict, not a drug dealer, although his drug and alcohol evaluation did not show that he had an addiction to heroin. (**Id.** at 180, 188).

On rebuttal, and over defense counsel's objection, the Commonwealth played a prison telephone conversation between Appellant and his aunt in which he unsuccessfully tried to convince her to testify that he was a heroin addict. As explained by the trial court: "In the brief conversation, [Appellant] told his aunt what to say to support his 'addict defense.' When she told him she could not say what he wanted, [Appellant] pleaded with her to say it anyway." (Trial Ct. Op., 4/15/14, at 8).[2]

On September 13, 2013, the jury found Appellant guilty of PWID and possession of a controlled substance. On November 5, 2013, the court sentenced him to a term of not less than one nor more than five years' incarceration, plus fines and costs. The court denied Appellant's motion to modify his sentence on November 19, 2013. Appellant timely appealed.[3]

Appellant raises three issues for this Court's review:

---

[2] The recording was not transcribed. However, this Court requested and obtained the disc (Commonwealth's exhibit number 19) to review its contents. The trial court's summary of what it contained is accurate.

[3] Appellant filed a timely Rule 1925(b) statement of errors on January 28, 2014 pursuant to the court's order; the court filed a Rule 1925(a) opinion on April 15, 2014. **See** Pa.R.A.P. 1925.

I.    Was the evidence presented at trial sufficient to sustain a conviction on all charges when [Appellant] did not have actual or constructive possession of the heroin, and the Commonwealth did not prove [Appellant] intended to deliver the six specific packets of heroin seized from the vehicle?

II.    Was [Appellant's] conviction against the weight of the evidence as to shock one's sense of justice when the uncontradicted evidence proved Appellant did not know the heroin was hidden inside a glove lying on the floor in the rear of his vehicle, and there was no direct evidence linking either the money or the drugs to the present distribution of heroin?

III.    Whether the trial court erred by admitting the prison phone call recording into evidence when the probative value of the conversation was low and the recording's admission likely [to] lead to inaccurate and unfair deductions because the content of the recording tended only to show that [Appellant's] aunt was not aware of his drug addiction?

(Appellant's Brief, at 5).

In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction of PWID.  (*See id.* at 14-26).  Specifically, Appellant claims that the Commonwealth failed to prove that he had "actual or constructive possession of the contraband at the time of its discovery" or that he had the "intent to deliver . . . the six packets of heroin that were discovered in his vehicle[.]"  (*Id.* at 15, 20).  We disagree.

Our standard of review of a challenge to the sufficiency of the evidence is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for

- 5 -

the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Baker*, 72 A.3d 652, 657-58 (Pa. Super. 2013), *appeal denied*, 86 A.3d 231 (Pa. 2014) (citation omitted). Also, "[w]hen reviewing a challenge to the sufficiency of the evidence with regards to a PWID conviction, we are mindful that [t]he Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. . . ." *Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa. Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009) (citation and quotation marks omitted).

Here, Appellant first argues that the Commonwealth failed to support its claim of PWID because "he was not in actual possession of the heroin when police arrived, and the testimony of Corporal Groller as to [his] movements towards the rear of his vehicle is insufficient to prove constructive possession." (Appellant's Brief, at 14). Appellant's argument has no merit.

Where, as in the instant case, the drugs were not found on the defendant's person, the Commonwealth must demonstrate constructive possession, that is, the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control. As with any other element of a crime, [t]he intent to exercise conscious dominion can be inferred from the totality of the circumstances.

*Commonwealth v. Dargan*, 897 A.2d 496, 503-04 (Pa. Super. 2006), *appeal denied*, 916 A.2d 1101 (Pa. 2007) (citations and quotation marks omitted).

In the present case, Appellant was the sole occupant of the vehicle, which was registered to him, and he was driving when police stopped him. (*See* N.T. Trial, 9/11/13, at 38, 115). When the officers activated their overhead lights, Corporal Groller witnessed Appellant immediately turn and throw something toward the vehicle's right back passenger seat, where police subsequently found a glove containing six glassine packets with a total of .18 grams of heroin. (*See id.* at 38-39, 105, 113). The fact that Appellant threw something toward the location where the heroin subsequently was found shows that he had the knowledge and intent to control the heroin sufficient for a finding of constructive possession. *See, e.g.*, *Commonwealth v. Cruz Ortega*, 539 A.2d 849, 851 n.1 (Pa. Super. 1988) (passenger found to constructively possess cocaine found under his seat in car where he had equal control and access to driver's rented

vehicle); ***Commonwealth v. Thomas***, 386 A.2d 64, 66 (Pa. Super. 1978)[4]

(finding defendant intended to exercise control of heroin when police

observed him make motion toward gas pedal where drugs were then found);

***Commonwealth v. Griffin***, 326 A.2d 554, 556 (Pa. Super. 1974) (under

totality of circumstances, defendant's constructive possession established

where police found heroin in trunk of car he had been driving).  Therefore,

Appellant's argument that the Commonwealth failed to establish that he had

possession of the heroin found in his vehicle does not merit relief.[5]  ***See***

***Dargan***, ***supra*** at 503-04.

_____

[4] We are not persuaded by Appellant's attempt to distinguish ***Thomas***.
(***See*** Appellant's Brief, at 17-18).  Appellant claims that, because the police
in ***Thomas*** found the heroin immediately and, in this case, they found it
after securing a search warrant, the Commonwealth failed to prove
constructive possession.  (***See id.***).  We disagree.  This Court reached its
conclusion in ***Thomas*** on the basis that police observed the defendant make
a movement toward the gas pedal of his vehicle and then found heroin
there.  ***See Thomas***, ***supra*** at 66.  Likewise, here, police saw Appellant
make a throwing movement from the driver's seat toward the back seat of
the vehicle, and they discovered the heroin there.  ***Thomas*** did not create a
requirement that the heroin be discovered while a defendant actually still is
sitting next to it, as Appellant seems to suggest.  (***See*** Appellant's Brief, at
17); ***see also Thomas***, ***supra*** at 66.  Therefore, we do not find Appellant's
argument legally persuasive.

[5] Appellant relies on ***Commonwealth v. Boatwright***, 453 A.2d 1058, 1059
(Pa. Super. 1982) (*per curiam*), in support of his argument that the evidence
was insufficient to establish constructive possession.  (***See*** Appellant's Brief,
at 14, 16-17).  However, the facts of ***Boatwright*** are distinguishable.
Specifically, in ***Boatwright***, there were three people in the car and the
officer saw the front passenger make a movement toward the driver's side
back seat.  ***See Boatwright***, ***supra*** at 1058-59.  When the police shined a
light onto the left rear floor of the vehicle, they saw a gun.  ***See id.***
*(Footnote Continued Next Page)*

In Appellant's second sufficiency argument, he maintains that the Commonwealth "failed to present any evidence reflecting [his] intent to deliver relating specifically to the six packets of heroin that were discovered in his vehicle[.]" (Appellant's Brief, at 20). We disagree.

The Pennsylvania Supreme Court has held that:

[I]f the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors.

Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large[] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237-38 (Pa. 2007) (citation and quotation marks omitted).

Here, the police found six packets of heroin, a total of .18 grams, hidden in a glove in Appellant's vehicle. (*See* N.T. Trial, 9/11/13, at 105, 113). In Appellant's right pocket, the police found $1,250.00 separated into

(Footnote Continued) _____

However, unlike in this case, the second passenger was seated in that rear seat, and the car and gun were registered to someone other than the driver. *See id.* Here, the car driven by Appellant was registered to him, he admitted that he kept his valuables there because he did not trust his fellow boarders, and no one else was in the vehicle. Therefore, *Boatwright* is distinguishable and is not legally persuasive.

smaller bundles and, in his left, they found $727.00, that Appellant also had divided into separate piles. (*See id.* at 41-43, 115-16). Detective Collare, a twenty-three year veteran, and an expert in street level drug trafficking, testified that this "scream[ed]" of drug dealing and trafficking. (*Id.* at 116; *see id.* at 42, 63, 100, 118). Further, the money was comprised mostly of twenty dollar bills, which Detective Collare testified is common in drug dealing. (*See id.* at 118). He also stated that drug dealers usually either have a small amount of drugs and a large amount of money, or vice versa, which was consistent with the fact that Appellant had only six packets of heroin, but approximately $2,000.00 on his person. (*See id.* at 42, 126).

Additionally, Sergeant Thornsberry, an expert in the operation of Ionscan equipment, testified that the money found on Appellant contained a much higher than average amount of cocaine residue on it, and therefore, in his expert opinion, it recently was in close proximity to cocaine and held by someone who handled drugs. (*See id.* at 91, 93). Detective Collare explained that drug dealers often sell multiple types of drugs and that, due to the way drugs are packaged, they often transfer more cocaine residue than heroin. (*See id.* at 120-22). Detective Collare testified that, in his expert opinion, "there is no doubt [the heroin was] possessed to distribute. I have no doubt about that." (*Id.* at 127). Based on the foregoing, we find that the Commonwealth produced ample evidence that Appellant had the intent to sell the six packets of heroin found in his vehicle. *See Ratsamy*,

*supra* at 1237-38; *see also Commonwealth v. Williams*, 615 A.2d 416, 418 (Pa. Super. 1992), *appeal denied*, 624 A.2d 110 (Pa. 1993) (concluding defendant had intent to deliver based on packaging of drugs, large sums of organized cash, and absence of drug paraphernalia).

Therefore, we conclude that the evidence was sufficient to establish that Appellant constructively possessed the heroin with the intent to distribute it. **See Ratsamy**, *supra* at 1237-38; **Baker**, *supra* at 657-58; **Dargan**, *supra* at 503-04. Appellant's first issue does not merit relief.[6]

In his second issue, Appellant maintains that the verdict was against the weight of the evidence. (**See** Appellant's Brief, at 27-29). This issue does not merit relief.[7]

---

[6] We are not legally persuaded by Appellant's reliance on **Commonwealth v. Smagala**, 557 A.2d 347 (Pa. Super. 1989), *appeal denied*, 571 A.2d 382 (Pa. 1989). (**See** Appellant's Brief, at 22-23). In **Smagala**, police found .8 grams of cocaine in one bag, two bundles of used glassine baggies, drug paraphernalia, and $834.00 in the defendant's garage. **See Smagala**, *supra* at 352. These facts are distinguishable from those in Appellant's case, where police found .18 grams of heroin in six individual glassine bags, approximately $2,000.00 divided into smaller bundles of money on Appellant's person, and no drug paraphernalia or used glassine baggies indicating personal use. Therefore, **Smagala** is distinguishable on its facts, and not legally persuasive.

[7] The Commonwealth argues that Appellant waived this issue by his failure to raise it with the trial court. (**See** Commonwealth's Brief, at 16-17). However, Appellant raised a weight of the evidence claim in his post-sentence motions. (**See** Appellant's Post-Sentence Motions, 11/15/13, at unnumbered page 3); **see also** Pa.R.Crim.P. 607 ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial[.]").

Our standard of review of a challenge to the weight of the evidence is well-settled:

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a **palpable abuse of discretion** will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91-92 (Pa. 2014) (citations omitted; emphasis in original). To succeed on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [C]ourt." *Commonwealth v. Shaffer*, 722 A.2d 195, 200 (Pa. Super. 1998), *appeal denied*, 739 A.2d 165 (Pa. 1999) (citation omitted).

In this case, Appellant has not argued or demonstrated that the trial court palpably abused its discretion when it denied his motion for a new trial

on the basis of the weight of the evidence. He merely argues again that the jury could not have found that he constructively possessed the heroin, and the Commonwealth failed to prove that he had the intent to deliver it. (*See* Appellant's Brief, at 27-28). Thus, Appellant has failed to advance an argument that invokes the appropriate standard of review. *See Morales*, *supra* at 91-92.

Moreover, our independent review of the record supports the trial court's finding that "the jury's verdict [was] amply supported by the evidence" and that "[t]he only possible evidence in [Appellant's] favor was his self-serving testimony, but the jury clearly found this testimony to lack all credibility." (Trial Ct. Op., at 7). Therefore, we conclude that the trial court did not palpably abuse its discretion in deciding that the verdict did not shock its sense of justice. *See Morales*, *supra* at 91-92. Appellant's second claim does not merit relief.

In his third issue, Appellant claims that "the admission into evidence of the recorded prison phone conversation between [him] and his aunt was unduly prejudicial and denied [him] his right to a fair trial." (Appellant's Brief, at 30). This issue does not merit relief.

It is well-settled that "[a] party may produce evidence to rebut testimony which he or she has elicited from an opponent's witness on cross-examination. Admission of rebuttal evidence is a matter within the sound

discretion of the trial court." ***Commonwealth v. Smith***, 694 A.2d 1086,

1092 (Pa. 1997), *cert. denied*, 525 U.S. 847 (1998) (citation omitted).

> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant.
>
> The threshold inquiry with admission of evidence is whether the evidence is relevant. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

***Commonwealth v. Antidormi***, 84 A.3d 736, 749-50 (Pa. Super. 2014),

*appeal denied*, 95 A.3d 275 (Pa. 2014) (citations and quotation marks

omitted). Further, evidence used to impeach the credibility of a witness is

admissible if relevant to that issue. ***See*** Pa.R.E. 607(b).

As observed by the trial court:

> Here, the phone conversation was offered to undermine the credibility of [Appellant's] self-serving testimony that he was a heroin addict[,] which implied he should not be convicted of the more serious crime of possession with intent as he was a mere user. In the brief conversation, [Appellant] told his aunt what to say to support his "addict defense." When she told him she could not say what he wanted, [Appellant] pleaded with her to say it anyway.
>
> Credibility is always relevant and [Appellant's] phone call[] went to the heart of his credibility. Further, there were no references to [Appellant's] incarceration or previous convictions

- 14 -

during the conversation so any prejudice was minimal. To the extent [Appellant] had a shred of credibility with the jury, his self-serving explanation of the call, offered on sur-rebuttal, was even less convincing than his direct testimony. . . .

(Trial Ct. Op., at 8).

After our independent review of the record in this matter, including the subject recording, we agree with the trial court. At trial, Appellant testified that, if he possessed the heroin, it would not have been with an intent to distribute, but because he was a heroin addict. (**See** N.T. Trial, 9/11/13, at 172, 180, 188). To contradict this testimony, the Commonwealth presented a recorded phone conversation between Appellant and his aunt. (**See id.** at 215). In that discussion, Appellant unsuccessfully attempted to convince his aunt to testify that he was a heroin addict, but she refused to do so, stating that she was not aware of his heroin addiction. (**See** Trial Ct. Op., at 8).

Based on the foregoing, we agree with the Commonwealth that "the recorded phone conversation directly rebutted [Appellant's] 'addict defense,'" and was relevant to his credibility. (Commonwealth's Brief, at 20); **see** Pa.R.E. 607(b). Appellant has failed to show any prejudicial effect and we cannot discern any. The content of the recording applied only to the present case, and did not include anything other than Appellant pleading with his aunt and her refusing to testify about an addiction of which she was not aware. (**See** Appellant's Brief, at 30-32; Commonwealth's Brief, at 20; Trial Ct. Op., at 8). Accordingly, we conclude that the trial court properly exercised its discretion when it found that the probative value of the

- 15 -

recording outweighed its potential prejudicial effect, and permitted the Commonwealth to offer the subject tape on rebuttal. ***See Smith***, ***supra*** at 1092; ***Antidormi***, ***supra*** at 749-50. Appellant's third issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2014