J-A09001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT WOODIE, | : | |
| | : | |
| Appellant. | : | No. 862 EDA 2018 |

Appeal from the Judgment of Sentence, February 20, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0006337-2016.

BEFORE: KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED JULY 03, 2019**

Robert Woodie appeals from the judgment of sentence following his jury convictions for aggravated assault, terroristic threats, and possession of an instrument of a crime.[1] For the reasons that follow, we affirm.

The trial court summarized Woodie's criminal acts as follows:

> On October 11, 2015 Complainant Lakeisha Cherry and [Woodie] attended his grandmother's 80th birthday party in Philadelphia. After the party, [Woodie] and [Ms. Cherry] went to his sister's home for an after-party. There, [Woodie] drank too much and vomited.
>
> [Ms. Cherry] drove [Woodie] home and assisted him in taking his clothes off for bed. She then undressed herself and got in the bed. About ten minutes later, [Woodie's] phone rang, and [he] did not answer. The second time the phone rang, [Ms. Cherry] answered believing it could be a family emergency. When she answered the phone, the caller

_____

[1] 18 Pa.C.S.A. §§ 2701, 2706, 907.

_____

* Retired Senior Judge assigned to the Superior Court.

said hello and then hung up, once he realized it was not [Woodie]. [Ms. Cherry] then woke [Woodie] and asked if he was homosexual, to which he answered, "Yes."

After a short exchange, [Ms. Cherry] became visibly upset and began to put her clothes on. [Woodie] then attacked her by grabbing her by her hair. They tussled back and forth on the bed, and then fell onto the floor. During the struggle, [Woodie] stated that he wanted to kill her, began looking in his dresser drawer, and stated, "I'm going to kill you. I'm going to kill myself."

Next, [Woodie] dragged [Ms. Cherry] down a full flight of stairs by the braids in her hair through the dining room, living room, and into the kitchen where he grabbed a butcher knife. During the struggle in the kitchen, [Ms. Cherry] was stabbed in her side. [Woodie] also tried to stab her in the face, but [Ms. Cherry] blocked the knife, which caused several cuts to her hands. While tussling back and forth with the knife, [Woodie] again told [Ms. Cherry] he was going to kill her and asked her if she wanted to die. Next, [Woodie] grabbed [Ms. Cherry] and pushed her out the door. [Woodie] chased her down the steps and into the street, as a car was passing by the home. The witness stated that she was calling the police, which caused [Woodie] to run back into the house.

Philadelphia Police Officer Biles and his partner responded to the 911 call. The officers were drawn to [Woodie's] house where, from the outside, they heard a disturbance and a male voice call for help. [Woodie] came to the door but was unable to open it, so the officers kicked the door in. Once inside the house, the officers encountered [Woodie], who was alone, described as "hysterical screaming, yelling, sweaty, and just kept repeating that somebody was trying to kill him." [Woodie] was detained. Officer Biles did not recall if he saw evidence of a struggle, blood, a knife, or box cutter in the home, or on [Woodie]. Biles did have a faint recollection of seeing weave hair somewhere in the house.

When Officer Biles returned to the street, [he] saw [Ms. Cherry with] cuts on her hand. [Ms. Cherry] was uncooperative and refused medical treatment. [She]

testified that she did not talk to the responding officers because she "was in shock" and "just wanted to go home."

After leaving the scene, [Ms. Cherry] went home, undressed, and realized that her cuts were far worse than what she originally believed. [She] received fifty-one staples at the hospital. The staples were placed on her right calf, left and right thigh, and neck, which were caused by a box cutter. [Ms. Cherry] also received stitches on her left hip where she was stabbed with the butcher's knife. There were bite marks across her chest and breast where [Woodie] bit her several times during the struggle. [Ms. Cherry] still has a four-inch scar on her neck, and [she] displayed it in court for the jury. [Woodie] also choked [Ms. Cherry] in his bedroom, which resulted in several scratches on her neck. After [Ms. Cherry] left the hospital, she went to the police station and filed a report.

Trial Court Opinion, 7/20/18, at 2-4.

Prior to trial, the Commonwealth filed a motion *in limine* to admit the 911 recording into evidence, because the person who placed it did not remain at the scene to discuss the incident with police. Over Woodie's objection, the trial court admitted the recording, as a present-sense-impression exception to the hearsay rule. Woodie and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

The jury convicted Woodie, and the trial court sentenced him to six to twelve years in the state penitentiary, followed by probation. Woodie filed no post-sentence motions. Instead, he immediately and timely appealed.

Woodie raises the following three issues for our consideration:

1.    Did the trial court err by admitting the anonymous 911 call?

2.    Was the conviction for aggravated assault against the weight of the evidence?

> 3.      Was the evidence insufficient to convict Woodie of possession of an instrument of crime?

*See* Woodie's Brief at 5-6.  We address each appellate issue in turn.

*1.      Admissibility of the 911 Recording*

Woodie's first issue deals with the trial court's admission of the 911 call into evidence.

The decision to admit or to exclude evidence is committed to the trial court's sound discretion, and this Court may only reverse evidentiary rulings if the trial court abused that discretion.  ***Commonwealth v. Laird***, 605 Pa. 137, 988 A.2d 618, 636 (Pa. 2010).  There is no abuse of discretion "merely because an appellate court might have reached a different conclusion"; instead, it is the "result of manifest unreasonableness, or partiality, prejudice, bias, or ill will, or such lack of support so as to be clearly erroneous." ***Id***.

Woodie acknowledges our deferential standard of review for evidentiary issues.  *See* Woodie's Brief at 3-4.  However, when arguing that the trial court should have excluded the 911 recording, he discusses this standard only briefly.  ***See id.*** at 23.  Woodie asserts the trial court abused its discretion, because it did not address the question of the 911 recording's prejudicial effect in its 1925(a) Opinion.  He also notes that the trial court initially discussed the possibility of unfair prejudice, when it first considered the Commonwealth's motion *in limine*.  The trial court limited that discussion to the caller's mention of a nude man carrying a knife, in a residential neighborhood.

The 1925(a) Opinion and the trial court's discussion with the two attorneys on the motion *in limine* are insufficient to show an abuse of discretion. First, the 1925(a) Opinion is not the end-all-and-be-all of our appellate review. Simply because the opinion did not address Woodie's claim of error does not mean he automatically succeeds on this issue. Under the right-for-any-reason doctrine, we may "affirm the trial court's decision on any basis that is supported by the record." *In re A.J.R.-H.*, 188 A.3d 1157, 1176 (Pa. 2018). Therefore, the mere fact that the trial court did not address Woodie's appellate issue in the 1925(a) Opinion does not automatically mean a reversible abuse of discretion occurred, as Woodie's brief implies.

Second, Woodie's reference to the trial court's discussion of undue prejudice in a part of the recording cannot be grounds for reversal, because his attorney rejected the trial court's offer to redact that portion of the call about a nude man with a knife. *See* N.T., 10/19/17, at 5. The exchange was as follows:

| | |
|---|---|
| **DEFENSE COUNSEL:** | My request is that, if the [911] tape is played, I want the entire tape played. |
| **THE COURT:** | You want the entire tape played? |
| **DEFENSE COUNSEL:** | Yes. |
| **THE COURT:** | Very well. Motion is granted. |

*Id.*

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. Because Woodie asked the trial

- 5 -

court to play the entire 911 recording, he did not raise the undue-prejudice issue that the trial court spotted, *sua sponte*, the day prior. We therefore hold that Woodie may not base his appeal on the caller's description of him naked with a knife outside his home. He has waived this portion of his argument.

The remainder of Woodie's argument on the 911 recording proceeds as if our standard of review is *de novo*, because he reargues why the recording should not be in evidence. He asserts the 911 recording is unfairly prejudicial under Pennsylvania Rule of Evidence 403.[2]

Woodie has two bases for this claim. "First, the anonymous call depicted the scene in a ways completely contradictory to what the officers saw on the scene." Woodie's Brief at 21. Second, he contends that the anonymity of the caller and inconsistencies between what she said on the recording and the police officer's version of events weighs against the 911 recording's probative value.[3] ***See id.*** at 22-23.

These arguments are unavailing, because they do not explain – much less convince us – that the trial court misapplied or overrode the law, made a clearly unreasoned decision, or that it based that decision on bias, prejudice,

---

[2] Pennsylvania Rule of Evidence 403 provides that a trial "court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[3] We listened to the 911 recording to ascertain whether its admission was an abuse of the trial court's discretion.

or ill will.  In fact, the thesis of Woodie's argument is the "trial court **should not** have admitted the anonymous 911 call."  Woodie's Brief at 20 (emphasis added).  What the trial court **should** have done is a very different question from what it **may do** within the bounds of its discretion.

We may not substitute our judgment for that of the trial court on an evidentiary issue.  This Court cannot possibly tell trial judges after a case is over how they should have ruled on every piece of evidence that came before them.  We may decide only whether their evidentiary decisions are rational and their interpretations of the Pennsylvania Rules of Evidence are correct.  **See Laird**, **supra**.  If so, we must leave the trial court's decision undisturbed.

Woodie makes no claim that the trial court's exercise of judgment here was either irrational or the result of an erroneous interpretation of Rule 403.  Thus, he has failed to persuade us that any abuse of discretion occurred.  The first appellate issue affords Woodie no relief.

*2.     The Weight of the Evidence & Waiver*

Next, Woodie challenges the weight of the evidence for his aggravated assault conviction.  To preserve a weight-of-the-evidence claim, an appellant must raise it before sentencing or in a post-sentence motion.

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1) orally, on the record, at any time before sentencing;
>>
>> (2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pennsylvania Rule of Criminal Procedure 607(A)(1)-(3). "As noted in the comment to Rule 607 . . . a challenge to the weight of the evidence must be raised with the trial judge, or it will be waived." *Commonwealth v. Gillard*, 850 A.2d 1273, 1277 (Pa. Super. 2004), *appeal denied*, 863 A.2d 1143 (Pa. 2004).

Appellants may not raise a claim challenging the weight of the evidence for the first time in a Rule 1925(b) statement. *See, e.g., Commonwealth v. Burkett*, 830 A.2d 1034 (Pa. Super. 2003). Failure to avail oneself of any of the methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. *Id.*

Here, Woodie did not challenge the weight of the evidence before his sentencing, and he did filed no post-sentence motions. Instead, he appealed immediately from the judgment of sentence and raised the weight-of-the-evidence claim for the first time in his 1925(b) statement. As such, he has waived this issue.

## 3. *The Sufficiency of the Evidence*

Finally, Woodie's third issue challenges the sufficiency of the evidence for his conviction of possession of an instrument of crime. In his view, neither the trial court nor the Commonwealth articulated what type of instrument of crime he used upon Ms. Cherry.

Our standard of review for a challenge to the sufficiency of the evidence requires us to determine whether the evidence admitted at trial, with all reasonable inferences viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish every element of the convicted offense beyond a reasonable doubt. *Commonwealth v. Collins*, 703 A.2d 418, 420 (Pa. 1997). We must consider circumstantial evidence equally with direct evidence, and the Commonwealth may sustain its burden by relying on circumstantial evidence alone. *Commonwealth v. Davalos*, 779 A.2d 1190, 1193 (Pa. Super. 2001). The Commonwealth's established facts and circumstances need not preclude the possibility of innocence. *Commonwealth v. Dargan*, 897 A.2d 496, 503 (Pa. Super. 2006). If the evidence allows a fact-finder to determine that all necessary elements are established, then the evidence sufficiently supports the verdict. *Davalos*, 779 A.2d at 1193.

Woodies asserts that the Commonwealth produced legally insufficient evidence to prove he possessed an instrument of a crime. The General Assembly has defined that offense as follows:

> (a) Criminal instruments generally. -- A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally . . .
>
> (d) Definitions -- As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> "Instrument of crime." - Any of the following:

> (1) Anything specially made or specially adapted for criminal use.
>
> (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.
>
> "Weapon" - Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon.

18 Pa.C.S.A. § 907.

As the trial court opined:

> The trial evidence, including the victims testimony that she had been cut . . . with a box cutter and stabbed with a knife, corroborated by the medical treatment which included numerous stitches to cuts about her body, clearly establishes that [Woodie] carried out the assault with a knife and box cutter. No error [occurred].

Trial Court Opinion, 7/20/18, at 8-9.

The trial court's analysis is brief, to the point, and correct. The Commonwealth need no more proof than Ms. Cherry's own testimony to establish all the elements of this offense. She explained that Woodie held and used a knife and box cutter to attack her.[4] Therefore, he (a) possessed the

_____

[4] As such, Woodie's discussion of constructive possession is without merit. **See** Woodie's Brief at 32-33. The Commonwealth did not need to prove constructive possession of the knife and box cutter, because Ms. Cherry's testimony establishes Woodie's **actual** possession of those objects. The fact that the weapons disappeared between the attack and the police officers' search of Woodie's home is irrelevant, in light of Ms. Cherry's testimony, which, obviously, the jury credited when it convicted Woodie.

knife and box cutter, and (b) he intended to commit aggravated assault while he possessed them.

We therefore conclude that Woodie's third issue warrants no appellate relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/3/19