J-A10029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAHEEM ROBINSON | : | |
| | : | |
| Appellant | : | No. 1570 EDA 2022 |

Appeal from the PCRA Order Entered June 3, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001523-2015

BEFORE: PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED AUGUST 18, 2023**

Appellant, Raheem Robinson, appeals from the order entered in Philadelphia County Court of Common Pleas, denying his petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this case are as follows. Appellant was arrested and charged with first-degree murder and related offenses in connection with the murder of Shaquille Hall ("Victim"). Sakinah Wyatt, Appellant's girlfriend at the time of the murder, testified that she met Victim approximately three weeks before he was murdered when Victim asked Ms. Wyatt if she wanted to buy a phone from him. Ms. Wyatt did not have

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

her ID card with her, so she invited Victim into her home while she looked for the card. She did not find the card, but she told Victim she would buy the phone later.

On April 30, 2014, Appellant and Ms. Wyatt were in her bedroom when she heard noises outside of the room. Upon opening the door, Ms. Wyatt found Victim standing in her hallway. Neither Appellant nor Ms. Wyatt had invited Victim into the home. Ms. Wyatt testified that she saw Appellant yell at Victim, pull out a gun, and shoot Victim. Ms. Wyatt ran out of the home after the first shot but heard a second shot. At trial, the jury viewed a video taken on the day of the murder which showed Appellant entering a nearby store, walking out, and pouring bleach on his hands. A couple of days later, Victim's body was found in an alley by the same store. The body was wrapped in a sheet and had bleach poured over it.

Appellant testified that Ms. Wyatt called him on April 30, 2014, and frantically asked him to come over. When Appellant arrived at her home, Ms. Wyatt and a man named "Money" asked Appellant to help move a body wrapped in a sheet. Appellant began to help but threw up on his hands. Appellant explained that he went to the store to wash the vomit off with bleach, and he did not return to help with the body.

During her direct examination, Ms. Wyatt testified that after the murder, she visited Appellant six times while Appellant was incarcerated for charges unrelated to the current incident. Ms. Wyatt explained that she visited him

because, "I was scared because he threatened my life" and wanted Appellant to "think everything is still cool" between them. (N.T. Trial, 1/6/16, at 120-21). Defense counsel did not object to Ms. Wyatt's testimony. During cross-examination, the following exchange took place:

Defense: Now, you said you were so frightened, but you agreed yesterday, when [the prosecutor] asked you some questions, that you had gone to visit [Appellant] while he was in jail, right?

Ms. Wyatt: Yes.

Defense: And you agreed that he was in jail for some other offense, not this, not this homicide, right?

Ms. Wyatt: Right.

Defense: As a matter of fact, it was a domestic violence case, right?

Ms. Wyatt: Right.

Defense: With his girlfriend, right?

Ms. Wyatt: I guess.

Defense: Now, you didn't go visit him one time, two times, or three. You went and visited him six times, right?

Ms. Wyatt: Yes.

Defense: As a matter of fact, this was all before, this was all before the police went and got you and brought you down to Homicide for you to ask you what you knew about this homicide; right? This was all before that, right?

Ms. Wyatt: Right.

\*   \*   \*

Defense: And then when it's time to leave, the person that

- 3 -

you're saying that you're afraid of and that you're scared of and who threatened to kill you and called you all sorts of defaming language, you actually give him a kiss on the cheek and embrace when you leave, right?

Ms. Wyatt: I give him a hug. I don't kiss.

* * *

Defense: You give him a hug. You hug the man who killed a man in your house and threatened to do you or have somebody else do it. You saw him six times and hugged and embraced each time, right?

Ms. Wyatt: Yes.

(*See* N.T. Trial, 1/7/16, at 18-20). Appellant later testified that the

Commonwealth dropped the charges for the prior domestic violence arrest.

Additionally, the court instructed the jury as follows:

You have heard evidence that in June of 2014, [Appellant] was arrested on charges relating to allegations of domestic violence. Those charges were withdrawn by the Commonwealth at the scheduled preliminary hearing.

This evidence is before you for a limited purpose, and that is to explain the circumstances under which Sakinah Wyatt visited [Appellant] during the summer of 2014 at the House of Corrections.

You must not consider this evidence for any purpose or in any manner other [than] the purpose I just stated. You must not consider this evidence as tending to show that [Appellant] is a person of bad character or that he has criminal tendencies from which you might be inclined to infer his guilt on this case.

(*See* N.T. Trial, 1/13/16, at 182-83).

Ms. Wyatt also testified about damage to her home, stating "when we

had to start coming to court, that's when my door was kicked in, my windows

- 4 -

was busted out." (N.T. Trial, 1/6/16, at 119).  During closing arguments, the prosecutor argued that Ms. Wyatt was scared because "after she testified, she believes people came after her because her property was burglarized shortly thereafter." (*See* N.T. Trial, 1/13/16, at 135).

The jury convicted Appellant of first-degree murder, possessing an instrument of crime, and abuse of a corpse on January 14, 2016.  On the same day, the court sentenced Appellant to life imprisonment for first-degree murder, a concurrent sentence of two and a half to five years' imprisonment for possession of an instrument of crime, and a consecutive sentence of one to two years' imprisonment for abuse of a corpse.  Appellant filed a direct appeal on January 22, 2016, and this Court dismissed the appeal on March 18, 2016 for failure to file a brief.  Subsequently, Appellant filed a PCRA petition, and the court reinstated Appellant's direct appeal rights *nunc pro tunc* on June 8, 2017.  On June 28, 2018, this Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal on December 19, 2018.  ***See Commonwealth v. Robinson***, 1870 EDA 2017 (Pa.Super June 28, 2018) (unpublished memorandum), *appeal denied*, 650 Pa. 136, 199 A.3d 346 (2018).

Appellant filed a timely *pro se* PCRA petition on November 22, 2019. The court appointed counsel, who filed an amended PCRA petition on February 1, 2021.  Following an evidentiary hearing, the PCRA court denied relief on June 3, 2022.  Appellant filed a timely notice of appeal on June 11, 2022.  On

June 14, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and Appellant timely complied on June 17, 2022.

Appellant raises two issues for our review:

Did the trial court err in denying post-conviction relief after an evidentiary hearing when trial counsel was ineffective for:

(a)    failing to file a motion *in limine* to preclude testimony regarding [Appellant's] incarceration for an unrelated offense, failing to object when this testimony was elicited, repeating the information himself, and failing to object during the Commonwealth's closing argument when this information is again brought up by the Assistant District Attorney; and

(b)    failing to file a motion *in limine* to preclude testimony regarding damage to witness Sakinah Wyatt's home (which could not be connected to [Appellant] in any way), then failing to object when the information was elicited, and failing to object during the Commonwealth's closing argument when this information is again brought up by the Commonwealth?

(Appellant's Brief at 4).

In his issues combined, Appellant argues that trial counsel was ineffective for failing to object to certain prior bad acts evidence. Specifically in his first issue, Appellant asserts that mention of his prior arrest for an unrelated offense suggested Appellant had a propensity to commit criminal acts. In his second issue, Appellant complains that Ms. Wyatt's testimony about property damage to her home insinuated that Appellant caused the damage. Appellant contends that trial counsel had no reasonable basis for

failing to object to introduction of these prior bad acts, especially where the conviction relied solely on the credibility of Ms. Wyatt's testimony about witnessing Appellant shoot Victim against the credibility of Appellant's own testimony. Appellant reasons that the verdict may have been different but for counsel's ineffectiveness, and this Court should grant a new trial. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." *Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

Pennsylvania law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the

errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***See Williams, supra***.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

"A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Commonwealth v. Howard***, 553 Pa. 266, 274, 719 A.2d 233, 237 (1998).

> As a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion. …
>
> In recent years, this Court has expressed a distinct

- 8 -

preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions or inactions. …

…Review of the reasonableness of counsel's trial performance is not measured by an exercise in "spot the objection," as might occur in a law school evidence examination. Counsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. The fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking.

*Commonwealth. v. Colavita*, 606 Pa. 1, 34-37, 993 A.2d 874, 895-96

(2010) (internal citations omitted), *overruled on other grounds by*

*Commonwealth v. Bradley*, ___ Pa. ___, 261 A.3d 381 (2021).

Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002)

(some internal citations and quotation marks omitted).

Pennsylvania Rule of Evidence 404 provided at the time of Appellant's

offense: "Evidence of a crime, wrong, or other act is not admissible to prove

a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1) (effective March 18, 2013 to March 31, 2022). Nevertheless, the Commonwealth may introduce such evidence for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2) (effective March 18, 2013 to March 31, 2022).

Further, "[n]ot all improper references to prior bad acts will mandate a new trial[; m]ere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference." ***Commonwealth v. Stafford***, 749 A.2d 489, 496 (Pa.Super. 2000), *appeal denied*, 568 Pa. 660, 795 A.2d 975 (2000). As well, "[a]n appellate court will not attribute error when the [t]rial [j]udge provides a [cautionary] instruction that fully explains the purpose for which the jury may consider specific evidence." ***Commonwealth v. Dargan***, 897 A.2d 496, 502 (Pa.Super. 2006), *appeal denied*, 591 Pa. 671, 916 A.2d 1101 (2007). "[U]nless evidence to the contrary is shown, a presumption exists that the jury will obey the trial court's instructions." ***Id.*** at 501.

Instantly, Appellant's PCRA filings did not include a signed certification from trial counsel addressing Appellant's claims. Likewise, trial counsel did not testify at the PCRA hearing. By failing to proffer input from trial counsel, Appellant failed to meet his burden of proof to satisfy the "reasonable strategic

basis" prong for both ineffectiveness claims presented in his PCRA petition. ***See Colavita, supra***.

Nevertheless, the PCRA court determined from the record that trial counsel had a reasonable strategy for allowing in evidence that Appellant was incarcerated for an unrelated charge. The PCRA court found that trial counsel used this evidence to challenge the credibility of Ms. Wyatt's testimony that she did not come forward earlier about witnessing the murder because she was fearful of Appellant. Specifically, the court noted that counsel highlighted the inconsistency of Ms. Wyatt claiming she was so afraid of Appellant from witnessing him murder someone and yet willingly chose to visit Appellant six times while he was incarcerated.

The record supports the court's conclusion. Trial counsel vigorously cross-examined Ms. Wyatt regarding her statements that she was fearful of Appellant by questioning why she continued to associate with Appellant while he was incarcerated. Additionally, trial counsel highlighted her visits in his closing argument when he argued to the jury that Ms. Wyatt's testimony was not credible. As Appellant acknowledges in his brief, this case hinged largely on the credibility of Ms. Wyatt's testimony naming Appellant as the shooter. Thus, we agree with the PCRA court that trial counsel had a reasonable strategic basis for permitting the introduction of testimony that Appellant was incarcerated for an unrelated charge. ***See Pierce, supra***. Additionally, the jury was informed that the unrelated charges were dropped, and the trial court

instructed the jury that the evidence could only be used to provide context for the witness visiting Appellant in prison, minimizing any potential prejudice to Appellant. *See Dargan, supra*. *See also Chambers, supra*.

Regarding counsel's failure to object to the testimony about property damage to Ms. Wyatt's home, the PCRA court found that Appellant did not suffer prejudice from counsel's failure to object to this testimony. Ms. Wyatt testified that someone caused damage to her property around the time she initially testified, which caused her to be afraid. She did not state or imply that Appellant caused the damage or that Appellant instructed anyone to cause the damage.

On this record, we agree with the PCRA court's analysis. Evidence of vandalism to Ms. Wyatt's property which was not even attributed to Appellant has minimal prejudicial value in light of the compelling evidence of Appellant's guilt, including Ms. Wyatt's testimony that she witnessed Appellant shoot Victim, and the video evidence that showed Appellant pouring bleach on his hands on the day of the murder in the same area where Victim's body was later discovered with bleach poured over it. Therefore, we discern no error in the court's conclusion that Appellant failed to demonstrate that he was prejudiced by counsel's failure to object to testimony about damage to Ms. Wyatt's home. *See Chambers, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2023