J-S17037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :         PENNSYLVANIA
            Appellee         :
                                            :
             v.                 :
                                            :
JAMALL JACKSON                 :
                                            :
           Appellant        :       No. 1337 WDA 2021

Appeal from the PCRA Order Entered October 13, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0007067-2015

BEFORE: LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:               **FILED: JUNE 14, 2023**

Appellant, Jamall Jackson, appeals from the order entered in the Allegheny County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

A prior panel of this Court summarized some of the relevant facts and procedural history of this case as follows:

> At approximately 1:30 p.m. on May 8, 2015, Pittsburgh Police received several 911 calls indicating that a firearm had been discharged multiple times near the intersection of Sacramento Avenue and Minton Street. The shooter was described as a bearded African–American man, who had fired shots at the feet of a woman just before they entered a red car, which the assailant was driving.
>
> Police Officer Jeffrey Brock arrived at the scene. Officer Brock found no one and did not see blood, but he did retrieve eight shell casings from the sidewalk and a grassy

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

area near the described intersection, as well as a cell phone owned by Jenna Cox, Appellant's girlfriend. While Officer Brock was investigating the area, a bearded African-American male drove a red Impala along Minton Street. Police unsuccessfully attempted to stop the vehicle in question, which was found parked about .2 miles from the scene of the shooting. The Impala was registered to Ms. Cox.

Several days later, Officer Brock called Ms. Cox, who was evasive and appeared frightened. On May 13, 2015, Detective Dawn Mercurio called Appellant, who agreed to come to the police station for an interview. After being given his **Miranda**[2] warnings, Appellant made a statement, which the trial court described:

> Appellant told Detective Mercurio that he had been in a romantic relationship with Jenna Cox and that he had acted as a surrogate father for her five-year-old son. The natural father was incarcerated so he was acting in that individual's place. Appellant told Detective Mercurio that on the 8th of May, he was angry at Cox because he had learned that Cox and the natural father of her five-year-old had been talking behind his back and that the natural father had recently been released from incarceration. Appellant found out that Cox had taken her son's natural father to his son's school so that he could meet with the teachers and become more involved in his son's life. Appellant called Cox's cell phone and confirmed the fact that Cox was at her son's school with the child's natural father and he demanded that she leave him there and that she come pick him up at the 300 block of Minton Street.
>
> When Cox arrived, Appellant got in the passenger seat and he was very angry and pulled out a gun from his right pocket and set it on his lap while he was talking with her. The gun was a nine-millimeter Ruger handgun. He was yelling at her, telling her that he did not appreciate how deceitful she was and he

_____

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

demanded to know where the natural father was living because he needed to die. Cox then got out of the car and was walking down the street when Appellant followed her, telling her to get back in the car. When she refused to listen to him, he fired several rounds at her feet and she took off running. Appellant then got into the driver's side of the vehicle and was pursuing her down Minton Street. He told her to get back into the car and if she did not, he was going to harm her. She got back into the car and then they drove away. Appellant then drove to his father's house in McKees Rocks so that he could dispose of the firearm. After giving the firearm to his father, they drove back to Minton Street to look for the cell phone that Cox had dropped. Appellant told Detective Mercurio that his father still had the gun and then agreed to call his father to tell him that they at least wanted to obtain the weapon. His father agreed and then they rode to his father's house and his father came out to the police car with the gun and magazine in a bag and gave it to Detective Mercurio.

Trial Court Opinion, 4/13/17, at 4-5. The Commonwealth also presented evidence that Appellant was previously convicted of three counts of robbery [and one count of aggravated assault].

In response to this Commonwealth evidence, Appellant's father denied receiving the gun from Appellant and claimed that he found it in some bushes. Appellant also denied the entirety of the statement that he gave to Detective Mercurio.

The jury rejected Appellant's proof and convicted him of [persons not to possess firearms per 18 Pa.C.S.A. § 6105(a)(1), on March 29, 2016].

*Commonwealth v. Jackson*, No. 1599 WDA 2016 at 1-3 (Pa.Super. filed

Nov. 16, 2017) (unpublished memorandum). The court sentenced Appellant

on June 27, 2016, to four to eight years' imprisonment plus two years'

probation. This Court affirmed the judgment of sentence on November 16,

- 3 -

2017. *See id.* Appellant subsequently filed a petition for allowance of appeal following reinstatement of his appellate rights *nunc pro tunc*, but he discontinued that filing on May 21, 2019.

On June 24, 2019, Appellant timely filed a *pro se* PCRA petition. The court subsequently appointed PCRA counsel. Following a change of counsel, newly-appointed PCRA counsel filed an amended PCRA petition on February 8, 2021. The court held a PCRA hearing on October 5, 2021. On October 13, 2021, the court denied PCRA relief. Appellant timely filed a notice of appeal on November 10, 2021. On December 3, 2021, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) by January 3, 2022. Appellant timely complied.

Appellant raises two issues for our review:

> Whether appellate counsel gave ineffective assistance for failing to raise an issue regarding prior bad acts in violation of Pa.R.E. 404(b)?
>
> Whether trial counsel provided ineffective assistance for failing to properly object to admission of prior bad acts evidence in violation of Pa.R.E. 404(b)?

(Appellant's Brief at 4).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Parker***, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The

PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

For purposes of disposition, we combine Appellant's issues. Appellant argues appellate counsel was ineffective for failing to challenge on direct appeal the Commonwealth's introduction of improper "prior bad acts" evidence. Appellant claims that the Commonwealth sought to introduce evidence of his prior 2003 conviction for aggravated assault under Rule 404(b)(2) to demonstrate *modus operandi* and/or to identify Appellant as someone who previously possessed a firearm, alleged to be the same one used in the instant case. Appellant maintains that trial counsel objected to introduction of this evidence. Appellant claims the court permitted the Commonwealth to introduce evidence of the prior conviction but **only** to show that Appellant was a person prohibited from possessing a firearm based on the prior conviction, as a required element for the charge on trial of persons not to possess firearms. Appellant contends that the court did not admit such evidence under Rule 404(b)(2).

Appellant insists that Commonwealth witness, Deputy District Attorney Jan Necessary, then testified not only that Appellant was previously convicted of aggravated assault, but also regarding the facts of that underlying conviction. Appellant emphasizes that the underlying facts of his prior

conviction involved Appellant firing shots at his former girlfriend while she was in her car driving away with her four-year-old son in the back seat. Appellant contends that Ms. Necessary's testimony should have been limited to "what Ms. Necessary tried Appellant for, what the verdict of the case was, and a certified copy of the conviction." (Appellant's Brief at 26). Appellant suggests that Ms. Necessary's testimony went beyond what was required to establish an element of the offense on trial and, instead, demonstrated that Appellant was a person with the propensity to commit crimes as prohibited by Rule 404(b)(1). Appellant avers that such testimony was inadmissible under a Rule 404(b)(2) exception, as made clear by the court's ruling.

Appellant acknowledges that the court gave a cautionary instruction, but he complains that the instruction did not ameliorate the prejudicial effect of the testimony. Appellant concedes that the instruction informed the jury to consider Appellant's prior aggravated assault conviction solely as it pertained to establishing an element of the offense of persons not to possess firearms. Nevertheless, Appellant suggests that the instruction did not remove "the passions of the jury regarding the fact that Appellant shot at a former girlfriend while a child was in the car, and ultimately, it did not cure the deliberate violation of [the court's] ruling to limit the admissibility of the previous conviction to satisfy the element of" the firearms offense on trial. (*Id.* at 34). Appellant asserts that appellate counsel had no reasonable basis for failing to raise this issue on direct appeal, and that the failure to do so deprived

Appellant of receiving a new trial.

Alternatively, Appellant argues that trial counsel was ineffective in failing to raise a proper and timely objection to Ms. Necessary's testimony. Appellant acknowledges that trial counsel objected pre-trial to introduction of Ms. Necessary's testimony and again at trial. Nevertheless, Appellant suggests that trial counsel failed to lodge a proper objection to Ms. Necessary testifying about the underlying **facts** of the prior aggravated assault conviction during or after Ms. Necessary's testimony. Appellant highlights trial counsel's testimony at the PCRA hearing that there would have been no strategic basis for failing to object to such testimony. Appellant maintains that the Commonwealth improperly presented the facts of a prior case under the guise of proving an element of the crime for persons not to possess firearms. Appellant insists that had trial counsel made a timely objection, the facts of the previous conviction would have been stricken from the record, removing it from consideration for the jury when rendering a verdict. Appellant concludes that trial and appellate counsel were ineffective, and this Court must grant him a new trial. We disagree.

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining

process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

Pennsylvania Rule of Evidence 404 provided at the time of Appellant's offense: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1) (effective March 18, 2013 to March 31, 2022). Nevertheless, the Commonwealth may

introduce such evidence for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2) (effective March 18, 2013 to March 31, 2022). "When ruling upon the admissibility of evidence under the common plan exception, the trial court must examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive[.]" ***Commonwealth v. Green***, 271 A.3d 393, 402 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 280 A.3d 329 (2022). "Additionally, in order to use Rule 404(b) evidence to establish identity, the crimes must be so similar that logically the same person has committed both acts." ***Id.*** (emphasis and internal quotation marks omitted). Moreover, Rule 404(b) evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2) (effective March 18, 2013 to March 31, 2022).[3]

We further note that "[a]n appellate court will not attribute error when the [t]rial [j]udge provides a [cautionary] instruction that fully explains the purpose for which the jury may consider specific evidence." ***Commonwealth v. Dargan***, 897 A.2d 496, 502 (Pa.Super. 2006), *appeal denied*, 591 Pa. 671, 916 A.2d 1101 (2007). "[U]nless evidence to the contrary is shown, a presumption exists that the jury will obey the trial court's instructions." ***Id.***

---

[3] The current version of Rule 404(b) contains almost identical language as the previous version. ***See*** Pa.R.E. 404(b)(1)-(2) (effective April 1, 2022).

at 501.

The Crimes Code defined the offense of persons not to possess firearms at the time Appellant committed the crime at issue as follows:

**§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a) Offense defined.**—

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1) (effective December 16, 2008 to January 2, 2017).

Aggravated assault is an enumerated offense under subsection (b).  18 Pa.C.S.A. § 6105(b) (effective December 16, 2008 to January 2, 2017).

Instantly, the Commonwealth filed a motion *in limine* on March 23, 2016, seeking to present evidence of Appellant's prior bad acts.  Specifically, the Commonwealth sought to admit evidence that Appellant previously possessed a 9mm firearm and fired approximately three rounds at Naomi King on or around September 6, 2001.[4]  The Commonwealth claimed, generally, that such evidence was admissible under Rule 404(b)(2).

On the first day of trial before opening arguments, the parties discussed

---

[4] These were the underlying facts of Appellant's 2003 aggravated assault conviction.  We note that the victim in that matter, Naomi King, has no familial relationship to this authoring jurist.

- 11 -

the Commonwealth's motion *in limine*. The Commonwealth claimed that the handgun Appellant used in the 2001 incident was the same handgun Appellant possessed in the instant case. The Commonwealth claimed the similarities between the past incident and the facts of the instant case demonstrated a *modus operandi* such that the evidence was admissible under Rule 404(b)(2). Appellant's trial counsel refuted the Commonwealth's position, arguing that the proffered evidence did not satisfy any exception under Rule 404(b)(2), and would be more prejudicial than probative in any event. Trial counsel further acknowledged that the Commonwealth would already be introducing the fact that Appellant was previously convicted of aggravated assault to establish an element of the firearms offense on trial; thus, to introduce evidence of the underlying facts of that case would be "in the nature of piling on" and prejudicial. (N.T. Trial, 3/28/16, at 9).

After hearing argument from the parties, the following exchange took place:

> THE COURT: What conviction disqualifies him [from possessing a firearm]?
>
> [THE COMMONWEALTH]: Aggravated assault.
>
> THE COURT: Arising out of what?
>
> [THE COMMONWEALTH]: This incident, these 404(b).
>
> THE COURT: You will be permitted to put it in.
>
> [THE COMMONWEALTH]: Thank you, Judge.
>
> THE COURT: **It is part of elements of the**

- 12 -

**crime now. It is not 404.**

[TRIAL COUNSEL]:            Understood.

THE COURT:                 Anything else?

[THE COMMONWEALTH]: Yes, Your Honor. I would just submit to the [c]ourt, and I have explained to defense counsel, that I will be calling Deputy District Attorney Jan Necessary to testify to the facts underlying that prior conviction. I think we were in agreement that rather than go through the process of using a transcript, with the [c]ourt's permission I will be calling Deputy Jan Necessary because she prosecuted the case and she is available to testify.

THE COURT:                 [Trial counsel].

[TRIAL COUNSEL]:            I don't agree. I don't disagree. I'm not sure there is any better way to introduce that testimony but I'm not giving up any objection to hearsay or any others as the case may be.

[THE COURT]:               You will be permitted to do so.

(*Id.* at 11-12) (emphasis added).

Just prior to Ms. Necessary's testimony, trial counsel "renew[ed his] objection to this line of questioning to preserve the record for purposes of appeal." (*Id.* at 137). Ms. Necessary testified that she prosecuted Appellant in 2003 for aggravated assault based on an incident that occurred in September of 2001. Ms. Necessary confirmed that Appellant was convicted of aggravated assault at the conclusion of trial, and that a conviction of aggravated assault renders you unable to possess a firearm in Pennsylvania. (*Id.* at 139). Ms. Necessary identified a trial exhibit as a certified copy of the conviction and judgment of sentence for Appellant in the aggravated assault

case. (*Id.* at 140). The Commonwealth then asked Ms. Necessary to explain the underlying facts of Appellant's aggravated assault conviction. Ms. Necessary responded:

> The victim in this case was a woman named Naomi King. She was 24-years-old. She was the former girlfriend of [Appellant]. She was, on the date of the incident, she was in her car driving away from her home with her 4-year-old son in the back seat when [Appellant] emerged from some bushes or trees near the street where she was driving near her home and fired several shots at her vehicle while she was driving.

(*Id.* at 140-41). Ms. Necessary identified the gun involved in the aggravated assault case as a 9mm handgun. (*Id.* at 141). Trial counsel did not object at any point during Ms. Necessary's testimony.

Following the close of all testimony, trial counsel had the following exchange with the court:

> [TRIAL COUNSEL]: I have one additional matter to raise with the [c]ourt. Your Honor allowed the 404(b) evidence to come in. We respect the decision. That ship sailed to keep it out. What I respectfully request Your Honor to do is give a limiting or cautioning instruction that they only consider that 404(b) for the purpose laid out in Rule 404(b)[(2)] knowledge, mistake, the litany that I'm sure Your Honor is familiar with.
>
> [THE COMMONWEALTH]: I have no objection to that, Your Honor.
>
> THE COURT: It will be covered in the information given to them with respect to prior conviction is given to them for two purposes with respect to the 404(b) violation where it was a disqualification for the weapon but part of the elements for a particular crime and use it for that purpose to see if, in fact, the Commonwealth met its burden of proving the elements of that particular crime. …

- 14 -

(***Id.*** at 178-79).

When instructing the jury, the court stated:

> Now you have heard evidence of the fact that [Appellant] has convictions for the crimes of aggravated assault and robbery. These pieces of information have been given to you for a very limited purpose. With respect to the charge of aggravated assault, it is an element of the offense that has been charged, that is a person not to possess a firearm.
> …

(N.T. Trial, 3/29/16, at 196). Following the instructions, the court asked the parties if there were any additions or corrections, to which both parties responded negatively.

Significantly, regardless of whether trial counsel lodged a specific enough objection at trial, we cannot agree with Appellant's assertion that any failure to properly object to Ms. Necessary's testimony regarding the underlying facts of the aggravated assault conviction resulted in prejudice. As this Court explained on direct appeal when analyzing Appellant's challenge to the sufficiency of the evidence:

> Herein, Appellant does not contest that he was convicted of an enumerated offense… On appeal, Appellant challenges that the Commonwealth proved, beyond a reasonable doubt, that he was in possession of a firearm. Although Appellant confessed to Detective Mercurio that he had a gun in possession on the day in question, Appellant suggests that his confession must be discounted since it was not written or recorded, even though it could have been. [T]he jury assesses the credibility of the trial witnesses. Detective Mercurio outlined the contents of Appellant's statement, and the jury was free to credit her testimony, regardless of whether Appellant's statement was written or recorded. Hence, we reject Appellant's first position.

- 15 -

*Jackson, supra* at 6. (*See also* N.T. Trial, 3/28/16, at 86-107) (discussing Appellant's interview with Detective Mercurio).[5] Additionally, Officer Jason Farrell testified at trial that a 911 caller had reported that a vehicle of interest involved in the crime was a red Chevy Impala with a black male wearing all black. (*Id.* at 75). When the officer was at the crime scene collecting shell casings, he observed a vehicle fitting that same description driving by the officers. The officer identified the driver as Appellant. Because the vehicle drove off at a high rate of speed, however, the officers were unable to make contact with the driver that day. (*Id.* at 75-76).

Further, the court gave a cautionary instruction to the jury to consider the aggravated assault conviction for the "limited purpose" of analyzing "an element of the offense that has been charged, that is a person not to possess a firearm." (*See* N.T. Trial, 3/29/16, at 196). We can presume the jury followed the court's instruction. *See Dargan, supra*. In light of the overwhelming evidence of Appellant's guilt, and the court's issuance of a cautionary instruction in this case, we cannot say that the results of Appellant's trial would have been different had Ms. Necessary not testified about the underlying facts of Appellant's aggravated assault conviction, to

---

[5] Appellant testified in his own defense at trial and denied implicating himself in any statement to Detective Mercurio. (*See id.* at 158-59). The jury obviously rejected this testimony in favor of testimony from the Commonwealth's witnesses.

establish prejudice on Appellant's ineffectiveness claims.  ***See Spotz, supra***.

Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judge Lazarus joins this memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2023